**BENGER LABORATORIES LIMITED**

v.

**R. K. LAROS COMPANY, Inc.**

**BENGER LABORATORIES LIMITED,**
Plaintiff,

v.

**R. K. LAROS COMPANY, Inc.,**
Intervenor Defendant.

Civ. A. Nos. 24540, 26387.

United States District Court
E. D. Pennsylvania.

Dec. 3, 1959.

On Motion for Rehearing, Etc.,
Dec. 24, 1959.

Hayward H. Coburn, Drinker, Biddle & Reath, Philadelphia, Pa., and Charles J. Merriam, Merriam, Lorch & Smith, Chicago, Ill., for plaintiff.

Robert H. Young, Philadelphia, Pa., and Stanton T. Lawrence, Jr., New York City, John R. McConnell, Morgan, Lewis & Bockius, Philadelphia, Pa., Pennie, Edmonds, Morton, Barrows & Taylor, New York City, for defendant.

VAN DUSEN, District Judge.

This suit was initially instituted on January 22, 1958, in the United States District Court for the Northern District of Iowa by Benger Laboratories, Limited (hereinafter "Benger") against Fort Dodge Laboratories, Inc. (hereinafter "Fort Dodge"), alleging patent infringement and requesting damages and an injunction. On May 31, 1958, R. K. Laros Company (hereinafter "Laros") was allowed to intervene as a defendant, and on May 1, 1959, Fort Dodge was dismissed from the case. In the meantime, a similar action was commenced in this District by Benger against Laros. On May 15, 1959, Judge Graven signed an order transferring the Iowa suit to this District and the two cases were consolidated for purposes of these proceedings.

On August 21, 1959, the defendant, Laros, filed the motion currently under consideration. It requests that Armour and Company (hereinafter "Armour") and Lakeside Laboratories, Inc. (hereinafter "Lakeside") be joined as plaintiffs under F.R.Civ.P. rules 19 and 21, 28 U.S.C., or that the action be dismissed under F.R.Civ.P. rule 12(b) (7). In support of its motion, Laros asserts that the rights under the patent in issue which each of these firms has received from Benger qualifies each of them as an assignee entitled to bring a suit in its own name under the test laid down in Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923. This right to sue, the argument continues, carries with it a corresponding obligation to become a party in any action involving their interests under the patent in order to protect the defendant against further suits based on the same patent and claims of infringement, even though it successfully defends the first suit. Therefore, Laros concludes, "Waterman assignees" should be considered indispensable parties to this action and if they are not, or cannot be joined as parties, the suit should be dismissed.

Assuming that Armour and Lakeside qualify as assignees under the Waterman test, and that assignees of this sort are indispensable parties, the mo-

tion still cannot be granted. At the oral argument on this motion on October 26, 1959, counsel for the defendant stated that he had received the agreements between Benger and Armour and Benger and Lakeside, transferring certain rights under the patent in issue, sometime in August 1958. These agreements were ordered to be produced for the use of the defendant Laros by Judge Graven on August 12, 1958 (Document No. 42 in C. A. 26387), when acting on a motion of defendant Laros filed on August 6, 1958 (Document No. 38 in C. A. 26387). The motion to join Armour and Lakeside was not made until a year later, on August 21, 1959 (Document No. 14 in C. A. 24540). In the meantime, several depositions were taken in various parts of the country,[1] Fort Dodge was dismissed as a defendant, the action was transferred from Iowa to Pennsylvania; also a motion of Cutter Laboratories to intervene as a defendant has been considered, and the action is about ready for a final series of pre-trial conferences.

If either Armour or Lakeside are joined now, the depositions of these people may have to be taken again, they may present motions concerning the presence of Fort Dodge and Cutter Laboratories in this action, or they may seek a transfer of the suit since they are not bound by the prior proceedings on these matters. In addition, it would be necessary for them to institute a discovery program in order to prepare for trial. All this would postpone the trial and delay final adjudication of this matter. It must be noted that joinder of Lakeside and Armour is not necessary in order to protect their interests as they are not bound by this litigation. Laros requests their joinder for this very reason in order to protect itself against future suits.[2] As stated above, Laros had the information on which this motion is based for a full year. Under the circumstances, it is not in the interests of justice and sound judicial administration to grant the motion made at this late date.

■ In my opinion, dismissal is not automatic under the Federal Rules upon a showing that an indispensable party has not been joined. This is so in spite of the fact that this defense is based upon a defect considered to be on a par with lack of jurisdiction over subject matter and failure to state a claim or legal defense to the extent that it can be raised by the parties at any time during the proceedings. F.R.Civ.P. rule 12 (h) cannot be interpreted to mean that a party with the necessary information to make a motion for joinder of an indispensable party at his disposal can sit back and raise it at any point in the proceedings, when the only effect of the motion under the circumstances would be to protect himself and not the person alleged to be indispensable. Such an interpretation would violate the direction of F.R.Civ.P. rule 1 that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."

In Parker Rust-Proof Co. v. Western Union Telegraph Co., 2 Cir., 1939, 105

1. Depositions of James Trace and George Edds taken in Iowa on September 24, 1958 (Document No. 50 in C.A. 26387); John Wolf taken in Pennsylvania on October 10, 1958 (Document No. 70 in C.A. 26387); Jack W. Woods taken in Oklahoma on September 22, 1959 (Document No. 30 in C.A. 24540); and Rex Montgomery taken in Iowa on September 24, 1959 (Document No. 20 in C.A. 24540).

2. Normally, the court benefits from joining all possible litigants in a single suit to prevent a multiplicity of actions. There is a point in the proceedings, however, when the benefit derived from such a joinder is outweighed by the effect of a postponement of a final decision in the matter at the eleventh hour. The effect of a decision on the issues raised in this proceeding (particularly the validity of the patent), while not res judicata, will function as an important factor in the decision of Armour, Lakeside and Laros to institute suit and in any settlement discussions.

F.2d 976, the court reversed a lower court decree dismissing a bill for issuance of a patent because of the lack of an indispensable party defendant. The court stated in its opinion at page 979, of 105 F.2d:

> "Hence, in the absence of special circumstances making it inequitable to require Curtin to be joined, we should regard him as an indispensable party, as did the district court.

> "The doctrine that one whose interests will be affected by a decree must be made a party to the suit is an equitable doctrine, and a court of equity should not apply it, we think, where special circumstances would make its application inequitable. Such special circumstances exist in the case at bar."

One of these circumstances stated at page 979 of 105 F.2d was as follows:

> "The only purpose of such an objection was to protect Curtin's equitable rights and prevent his being concluded without a hearing; the Curtin-Howe Corporation had no recognizable interest of its own in balking the suit because of Curtin's absence; nor had Western Union. Under these circumstances, we hold that the conduct of Curtin and his company was so inequitable that a

court of equity should not sustain the objection."

In conclusion, the court stated at page 980, of 105 F.2d:

> "While no authority has been found dealing with facts at all similar, the general principle has long been recognized that, as the object of the rule respecting indispensable parties is to accomplish justice between all the parties in interest, courts of equity will not suffer it to be so applied as to defeat the very purposes of justice."

While the Parker case did not involve the Federal Rules of Civil Procedure, since it was tried before these rules became effective, the principles enunciated in that opinion are sound and should be just as applicable under the present rules, which contain no definition of "indispensable party." [3]

■ Recognizing the desirability of avoiding a multiplicity of suits based upon the same patent and infringement claims and reaching this decision solely because of the counterveiling factor of an unnecessary delay of a final determination of the matter, due to a lack of diligence on the part of the defendant in presenting its motion, I feel the motion should be granted to the extent that it is possible to insure that it will not

---

3. It is not necessary to decide whether it is better to say that because of the circumstances the person sought to be joined is not an indispensable party (see first quotation above from page 979 of 105 F.2d of the Parker decision) or to say that, though he is an indispensable party, the circumstances do not require that he be joined. The result is the same under either view and each can be read into the Federal Rules. Under the former approach, it is necessary to deal with some of the cases cited by the defendant in support of its motion. One line of cases holds that the owner of a patent is an indispensable party to an infringement suit by a licensee. See, for example, Independent Wireless Tel. Co. v. Radio Corp., 1926, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357. This result is required by the statutes authorizing infringement suits. 35 U.S.C.A. §§ 100, 281. Here the suit is by the initial owner and it is asserted that those to whom it has transferred certain rights are indispensable. Another line of cases holds that one with less than the rights of a "Waterman assignee" is not an indispensable party and states in dicta that one with such rights would be indispensable. See, for example, E. W. Bliss v. Cold Metal Process Co., D.C.N.D. Ohio 1959, 174 F.Supp. 99; Holliday v. Long Manufacturing Company, D.C.E.D. N.C.1955, 18 F.R.D. 45. Finally, none of these cases considered the effect of conduct such as we have here in classifying a party "indispensable."

cause any further delay in the proceedings.

Armour has been granted the right to make, use and sell the product in question in the veterinary field by Benger. The present posture of the record indicates that defendant's allegedly infringing activity is in this field. The question as to whether or not Armour qualifies as a "Waterman assignee", entitled to bring suit for infringement in its own name, is extremely close.[4] Without deciding that question, it is apparent that its interests under the patent are involved in the area concerned in this dispute to such an extent that it would be desirable to have it joined as a party. In order that there is no delay in these proceedings, however, it will be joined only in the event that it submits a stipulation within twenty days, stating that (1) it shall not demand to see the secret depositions and documents filed, or ordered to be filed, where court orders or agreement of the parties provided that such depositions and documents should be considered as confidential between the present parties or only revealed to the court; and (2) it agrees to be bound by the depositions previously taken and the orders of 5/1/59 dismissing Fort Dodge, 5/15/59 transferring the Iowa action, and this date with respect to Cutter and Lakeside. Otherwise, the motion will be denied insofar as it pertains to Armour.

■ The motion is denied with respect to Lakeside. Lakeside does not satisfy the Waterman test, even assuming it is appropriate here, since it only has the right to make and sell the patented product and not the right to use it. Furthermore, it does not appear to have the exclusive manufacturing rights in the United States. Finally, Lakeside's sole interest in the patented product relates to the human field and there is no indication in the record that the plaintiff will challenge defendant's activity in this area,[5] despite defendant's affidavit in support of its motion professing acts in this field, Document No. 34. Under the circumstances, the joinder of Lakeside would only hinder and not promote the efficient administration of justice.

### Order

And now, December 3, 1959, it is ordered that the motion of R. K. Laros Company to join Lakeside Laboratories, Inc. as a party plaintiff or to dismiss the suit is denied.

See attached letters of November 20, November 23, and December 1, 1959.

### Sur Motion for Rehearing or in the Alternative for Certification to the Appellate Court.

VAN DUSEN, District Judge.

■ The defendant, R. K. Laros Company (hereinafter, "Laros"), has not directed this court's attention to any matters which would alter the conclusions stated in its original Memorandum Opin-

---

4. Among other things, the cases cited by defendant in support of its contention that a grant limited to a commercial field or industry, as well as a geographical territory, is still an assignment within the meaning of the Waterman case, are all tax cases in which the question of assignment was germane to the issue of whether the consideration received was taxable as capital gain, rather than as ordinary income. Cf. American Chemical Paint Company v. Smith, D.C.E.D.Pa.1955, 131 F.Supp. 734. The use of the Waterman test in tax cases has been criticized. Parke, Davis & Co., 1934, 31 B.T.A. 427; Lawrence v. United States, 5 Cir., 1957,

242 F.2d 542; Rollman v. Commissioner of Internal Revenue, 4 Cir., 1957, 244 F.2d 634. By the same token, the presence of different considerations dictates that the interpretation of Waterman by the tax cases should not be considered as being conclusive. With respect to the significance of the limitation on Armour's right to assign (paragraph 9 of Exhibit B attached to Document No. 23), see United Lacquer Mfg. Corp. v. Maas & Waldstein Co., D.C.N.J.1953, 111 F.Supp. 139, 142.

5. See plaintiff's brief, page 3, Document No. 26 in Clerk's file.

ion (Document No. 36). This court was aware of the status of the pleadings at the time Laros filed its motion. This does not affect the conclusion that Laros was delinquent in filing its motion and that it would be inequitable to bring in new parties at this date and delay the trial when the sole benefit of such action would accrue to Laros. The fact that no Answer has been filed in Civil Action No. 24540 is not significant in view of the fact that Answers were filed on February 10, 1958 (Document No. 4), and on May 12, 1958 (Document No. 16) to the almost identical Complaint in the companion case, Civil Action No. 26387.[1] The contentions of the parties in both actions are known. The absence of an Answer to the Complaint in Civil Action No. 24540 has not hampered the parties in their preparations for trial. The lack of a formal pleading under these circumstances does not preclude this court from considering the equities in passing on the instant motion. It is also noted that the unanswered amendments to both Complaints (Document No. 11 in Civil Action No. 24540 and Document No. 54 in Civil Action No. 26387) only add the surrender of the original patent and the grant of a reissue patent and, in Civil Action No. 26387, also acknowledges the intervention of Laros as a defendant. These amendments in no way affect the substantive issues.

The use of the phrase "in the meantime," on page 3 of the original Memorandum Opinion [24 F.R.D. 452], was unfortunate since it does not clearly express the court's reasoning on the point involved. It is immaterial to the court's decision that two of the depositions were taken *after* Laros filed its motion. The fact remains that (assuming a favorable ruling), if the motion had been filed earlier, Armour and Company would have been made a party in time to participate in these proceedings, as well as in the other two depositions (see footnote 1 on page 3 of the original Memorandum Opinion (Document No. 36) ).

The court takes this opportunity to note that it still has not been made clear to it why anyone with a right to sue in his own name should be designated an indispensable party to a patent infringement suit, for when considered in the light of the jurisdictional limitations on bringing an action, this proposition would bar many persons with bona fide claims from securing redress. One of our primary concerns is to protect defendants from a series of suits arising out of the same claim or transaction. But the judiciary has a higher obligation to provide a remedy for anyone with a just claim. Therefore, when the two interests conflict and we are given a choice, this court is inclined to select that interpretation which will facilitate the availability of a forum, rather than leave a bona fide claimant remediless.

This court is of the opinion that there is a substantial ground for differences of opinion with respect to this decision insofar as it relates to Armour and Company. If our view of the law is in error and Armour and Company is an indispensable party to this action, any trial would be useless. It would, therefore, materially advance the ultimate termination of this litigation if an immediate appeal from this decision was allowed pursuant to 28 U.S.C.A. § 1292(b). An order containing this certification will be entered later today, since Armour has not filed the stipulation referred to in Document No. 36.

Also, it is noted that Armour has reaffirmed the position taken in the letter of December 1, 1959, which is attached to the original Memorandum Opinion, by

---

1. In view of the stipulation to consolidate these actions for trial (Document No. 8 in Civil Action No. 24540 and Document No. 68 in Civil Action No. 26387), the position taken in the answer filed in Civil Action No. 26387 is particularly significant as far as both actions are concerned.

the attached letter of December 14, 1959, which states:

"Armour * * * would not share any part of the damages which may be obtained by Benger in this action."

Order

And Now, December 24, 1959, It Is Ordered that the motion of defendant R. K. Laros Company for rehearing on the court's Memorandum Opinion and Order dated December 3, 1959, is denied.